## FISHER GOVERNOR CO., Inc., v. C. F. CAMP CO.

### No. 158.

Circuit Court of Appeals, Tenth Circuit.

April 14, 1930.

George A. Prevost, of Washington, D. C. (Mason, Williams & Lynch, of Tulsa, Okl., and Bair & Freeman, of Des Moines, Iowa, on the brief), for appellant.

342

Welburn Mayock, of Los Angeles, Cal. (Aby & Tucker, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and Mc-DERMOTT, Circuit Judges.

McDERMOTT, Circuit Court.

■ The appellant, plaintiff below, is the holder of letters patent No. 1,600,162, covering an improvement in a mounting for a float arm, the particular virtue of the invention being the use of ball bearings at two points where friction was interfering with the sensitive operation of the float. The defenses were, of course, the invalidity of the patent, and noninfringement. The trial court dismissed the bill. Error is assigned particularly as to claim 3.

For several years the oil industry has used a "separator tank," the purpose of which is to separate oil from natural gas. The mixture of oil and gas, as it came from the well, was introduced into a tank equipped with baffles; the oil settled at the bottom; the gas escaped at the top. It was desired to discharge the oil automatically when it had risen to a predetermined level; for that purpose a valve, with the float control familiar to all householders, was used. A hollow ball floated on the oil; when it reached a certain level, the valve was opened and the oil released; the float settled, and the valve was closed. Originally the float was inside the tank; the surging of the oil made it desirable to place it outside; so a chamber was attached to the outside of the tank, in which chamber was the float; the float was connected with the valve through an arm attached to the float, the other end of the arm being fastened onto a shaft which rotated as the arm moved up and down; this shaft was seated in one wall of the chamber and passed through the opposite wall, where it was connected by linkage to the valve. The shaft was of larger diameter inside the chamber than out, the purpose of the off-setting shoulder being to keep it from slipping out. Where the shaft bore against one wall of the chamber and where it passed through the opposite wall, it was metal against metal— a plain bearing.

This worked well enough until the economics of the oil business prompted the use of the separators at higher gas pressures. When the pressure became more than 350 pounds to the square inch, trouble developed. The float stuck, and the device did not function. Witnesses for the plaintiff testified that the problem of making the device work in the presence of pressure existed for five or six years; that after elaborate study and experimentation, it was discovered that it did not work because the shaft was sticking; that the engineering knowledge of the patentee led him to the conclusion that the sticking of the shaft was caused by friction. Having located the trouble, an effort was made to relieve the friction by introducing a film of a lubricating ingredient between the bearing metals; that is, he oiled the bearing. But the oil soon dissolved in the gas chamber. He then conceived the idea of substituting a ball bearing for the plain bearing. He purchased ball bearings of suitable size, and tried it. One was not enough; so he put in two; together they preserved the alignment of the shaft; the one in the wall of the chamber where the shaft was seated, is a radial bearing; the one in the wall of the chamber through which the shaft emerges, is a thrust bearing, the shoulder of the shaft bearing lengthwise against it. The substitution of the ball bearings for the plain bearings reduced the friction, preserved the alignment of the shaft, and the apparatus worked.

He applied for and was granted a patent for his invention. Claim 3 reads: "In a structure of the class described, (a) a float arm casing, (b) a float arm therein, (c) a shaft connected with said arm and projecting through one wall of said casing, (d) said shaft having an enlarged portion within the casing, (e) a thrust bearing interposed between said enlarged portion and the wall of the casing through which the shaft emerges and (f) a ball bearing for mounting the shaft in the other side of the casing."

Plaintiff concedes that the float arm mounting, without the ball bearings, was in use long before the patent was applied for; it concedes that the use of ball bearings to resist radial and end thrust is old in the arts. It contends that there was patentable invention in discovering the difficulty and remedying it, and patentable invention in adapting ball bearings to a float mechanism.

The defendant uses ball bearings in a float mechanism, for the reduction of radial and thrust friction, thus accomplishing the same purpose as the patentee, by the same means. The bearings of defendant are differently located; the defendant uses a yoke which screws into the float chamber; the shaft is seated in the yoke, one end projecting into the chamber and attached to the float arm. The thrust bearing is in the lower end

of the yoke, inside the chamber; the radial bearing is at the outer extremity of the yoke, outside of the chamber.

If plaintiff's patent excludes the world from the use of ball bearings to reduce the friction of a rotating shaft in a float mechanism, then defendant's device is a mere colorable substitute, and infringes. Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. ——; Disc Grader & Plow Co. v. Austin-Western Road Machinery Co. (8 C. C. A.) 254 F. 430; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (8 C. C. A.) 106 F. 693, 719.

Ball bearings are old; their use is public property; their peculiar function is to reduce friction. In our opinion, one cannot avail himself of this ancient principle in a new device, and appropriate the idea to his exclusive use. At best, it involves no more than mechanical ingenuity to substitute ball bearings on a shaft which sticks in a plain bearing. In Sloan Filter Co. v. Portland Gold Min. Co. (8 C. C. A.) 139 F. 23, 26, the patentee mortised timbers, and used a variety of wedges, to give stability to a mechanism where nails could not be used; availing himself of chemical learning, the patentee used perforated lead in his device, where other minerals would not withstand the corrosive effect of chlorine gas. The court held that the patent was void; that the patentee could not appropriate the ancient arts of mortising and wedging, merely by adapting them to a new device. The court said: "The result of the application of the common skill and experience of a mechanic, which comes from the habitual and intelligent practice of his calling, to the correction of some slight defect in a machine or combination, or to a new arrangement or grouping of its parts, tending to make it more effective for the accomplishment of the object for which it was designed, not involving a substantial discovery, nor constituting an addition to our knowledge of the art, is not within the protection of the patent laws. Gates Iron Works v. Fraser, 153 U. S. 332, 14 S. Ct. 883, 38 L. Ed. 734; Florsheim v. Schilling, 137 U. S. 64, 11 S. Ct. 20, 34 L. Ed. 574; Hollister v. Benedict Mfg. Co., 113 U. S. 59, 5 S. Ct. 717, 28 L. Ed. 901; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438; Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Hotchkiss v. Greenwood, 11 How. 267, 13 L. Ed. 683; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 F. 432, 23 C. C. A. 223; Tiemann v. Kraatz, 85 F. 437, 29 C. C. A. 257."

Judge Walter H. Sanborn, in the Brake-Beam Case, supra, speaking of the use of a wedge in a new combination, held: "Neither the intuition of the inventor nor the skill of the mechanic is required to suggest the fitness of a wedge to take up slack, to prevent lost motion in, or to tighten the loose members of, a mechanical device. Its fitness for these purposes is common knowledge, and has been taught by the common experience of mankind. The argument of counsel for the appellants is, however, that this is not a patent for a wedge, but for the new combination of a wedge with the brake beam of Hien. But it is a conclusive answer to this contention that there is no more invention in the combination of a wedge of the usual form, discharging its customary function of tightening the parts of a mechanical device, with Hien's machine, than there is in the discovery of the wedge itself and its common use for this purpose. If this were not true, every combination of an old machine with a wedge, performing the function of tightening its parts, would constitute an invention."

And, in the same case, the same able jurist, speaking of the use of retaining lugs in a patentable combination, said: "There are some mechanical devices so obvious and appropriate for the performance of their accustomed functions that the common knowledge and experience of those unskilled in mechanics, to say nothing of those learned in the art, at once suggests their use when the results which they customarily attain are desired. Projections or lugs on approaching jaws or flanges, for the purpose of limiting their closing, are surely among these contrivances. The moment the want of this limitation is felt, projections on the jaws or flanges naturally occur to those unskilled, as well as to those skilled, in the art, as the most obvious and appropriate means to fill the want. There can be neither discovery nor invention in applying a remedy so plain to, or in combining a contrivance so obvious with, an old mechanical device which needs it."

In Hendy v. Miners' Iron Works, 127 U. S. 370, 8 S. Ct. 1275, 32 L. Ed. 207, the Supreme Court held there was no invention in the use of rollers to give mobility to an otherwise immobile body. In Aron v. Manhattan Railway Co., 132 U. S. 84, 10 S. Ct. 24, 25, 33 L. Ed. 272, the patent covered a combination of curved levers, hinges, linkage and locking lugs, by which two gates of a street car were closed by one movement. The court said that all the patentee did "was to adapt well-known devices to the special purpose to

which he contemplated their application" although it was conceded that "the new situation required adequate modifications of existing devices * * * appropriate to the new occasion." The court held that the adaptation and modification of well-known devices to a new occasion, did not involve inventive genius. In Saunders v. Allen (2 C. C. A.) 60 F. 610, 612, it was held that "mere mechanical ingenuity, and that of no high grade" was sufficient to suggest the introduction of antifriction rollers into the jaws of a pipe cutter. "Such a mode of relieving friction is so well known in the arts that it would seem not to require patentable invention to suggest its use in a pipe cutter to meet a recognized defect."

We have examined the authorities cited by appellant, and particularly Disc Grader & Plow Co. v. Austin-Western Road Machinery Co. (8 C. C. A.) 254 F. 430, which involved a combination of a rotary plowing disc, bearing plates and supports, and an unusual arrangement of roller with ball bearings. The trial court held the patent valid, but found no infringement. The question before the court was whether the defendant's device was but a colorable substitute. Moreover, the facts distinguish the case. The opinion discloses no purpose to overrule the earlier decisions of the same court from which we have quoted.

Appellant contends that there is patentability in discovering the difficulty and remedying it, and cites Kurtz v. Belle Hat Lining Co. (2 C. C. A.) 280 F. 277. But even under that rule, inventive genius must exist. We can see no exhibition of patentable genius in discovering that the reason a float does not work is because the shaft is sticking. If a mechanism of this sort is defective, the trouble is either because of a water-logged bulb, or because the connecting shafts are not functioning. The ordinary householder, confronting a like problem, first ascertains whether the float floats; if it does, the conclusion is irresistible that the shaft is sticking. If it took several years to discover this, as the evidence discloses, it took too long.

We conclude that no such inventive genius is disclosed by the record as entitles the plaintiff to exclude the world from using ball bearings on a moving shaft in an old float mechanism. If the patent is sustainable because of the accessible features of the particular details of assembly, which we do not decide, defendant has not availed itself of such details, and has not infringed.

It follows that the decree should be, and is, affirmed.