GATES IRON-WORKS *v.* FRASER *et al.*

(*Circuit Court, N. D. Illinois.* April 5, 1890.)

1. PATENTS FOR INVENTIONS—EXTENT OF CLAIM—ORE-CRUSHERS.
   A claim for a mill constructed of a conical shape, and having an eccentric motion in the manner set forth, is not a broad claim for any mill having such shape and motion, irrespective of its other features of construction and operation.

2. SAME.
   Words of limitation in claims are not to be disregarded, and claims cannot be broadened by eliminating or disregarding such words.

3. SAME—PATENTABILITY—PRIOR STATE OF ART—CHILLED BEARINGS.
   Chilling bearings and wearing parts are old in the arts, and it does not require invention to chill any known bearing. Gates did not make any invention in chilling Brown's bearings.

4. SAME.
   Bearings similar in construction and operation cannot be differentiated from each other by chilling one of them.

5. SAME—BABBITTED SEGMENTS.
   Babbitting the wearing portions of bearings does not involve invention, and a claim for a bearing piece having a segmental babbitted portion is not infringed by a babbitting entirely around the bearing part.

6. SAME—COMBINATION—IMPROVEMENT OF PARTS.
   The improvement of one of the elements in a combination of all old parts, which does not change the character or operation of such combination, does not make a new one. Such changes relate to the part improved, and not to the larger combination.

7. SAME—GYRATING SHAFT MACHINE.
   It does not amount to a new improvement or to invention to apply common devices to a gyrating shaft machine, such machine being old in the art.

8. SAME—EXTENT OF CLAIM—BREAK-PINS.
   Break-pins being old and common in the arts, the Rusk and Raymond patents cannot be extended beyond the limits of their claims; and when not so extended the defendants do not infringe.

9. SAME—ISSUE OF LETTERS—AMENDMENT OF CLAIMS.
   Amendments made upon requirement of the patent-office, or in view of references, are not to be disregarded in construing claims.

In Equity. Final hearing.

Suit was brought for alleged infringement of eight patents, and proofs made as to seven, to-wit; Nos. 56,793, to H. Pierce; 201,646, to C. M. Brown; 243,343, 243,545, 246,608, 250,656, to P. W. Gates, known in the record as Gates' patents Nos. 1, 2, 3, and 4, respectively, all of which were for improvements in stone or ore-crushers; Nos. 110,-397, to J. H. Rusk, and 237,320, to G. & A. Raymond, for improvements in break-pins for grinding-mills.

*Coburn & Thacher*, for complainant.

*West & Bond*, for defendants.

GRESHAM, J. The single claim of the Pierce patent reads: "The construction of a conically shaped crushing-mill, with an eccentric motion as herein described, for the purposes and in the manner substantially set forth." The claim is not broadly for the construction of a conically shaped crushing-mill with an eccentric motion. The very language of the claim limits it to a mill constructed in the manner substantially as set forth, and the claim, thus construed, describes a mill, or machine,

radically different from the defendants' machine. The latter does not have the rocking wedge section of the Pierce machine, without which it would not operate, to say nothing of other differences.

Claims 2, 3, and 4 of the Brown patent are involved in this suit. The fourth claim is limited to a shell, inclosing at its upper end a concave breaker, and provided with an oblique trough, "integral with the frame, the inner edge of which extends upward and within the concave base of the breaker, C, all around." This claim was allowed, on the ground that this feature of the combination was an improvement on anything in the prior art. One element in the combination covered by the second claim is "the breaking-head, C, constructed with a concave base, as shown." Both the drawing and the specification show a concave breaking-head into which the shell or trough, n, extends. The trough or shell, n, is cast integral with the case shell. These claims cannot be broadened by eliminating or disregarding any of their language. The breaking-head of the defendants' machine is not concave, and it follows that this machine has no trough extending upward, and within the concave breaking-head. The defendants' machine, therefore, infringes neither the second nor the fourth claim of the Brown patent. The defendants' machine does not contain the spindles with the sliding bearing mentioned in Brown's third claim, or any other sliding bearings, and the adjusting screw or step embraced in the third claim is not found in the defendants' machine.

Gates' patent No. 1 relates to an improvement in the upper ball and socket bearing of the machine. The interior bearing surfaces are not required to be chilled by the Brown patent, while the Gates patent No. 1 is for chilled interior bearing surfaces. This change involved no invention. Gates did nothing more than take the bearings of the Brown patent, and chill them. The testimony in the record shows that Brown and Scoville chilled segmental bearings in 1877, which was prior to the application filed by Gates for his patent. The chilling of wearing surfaces to avoid friction was well known in the art long before the date of the Gates patent. Even, if that patent is valid, the defendants' bearings are not chilled. The efforts made to differentiate the machines made in accordance with Gates' patent No. 2 from the Brown and Scoville machines are unsatisfactory. The defendants' machine is, in substance, the old No. 2 Brown & Scoville machine. The chill in Gates' No. 2 machine is the chill in Gates' No. 1 patent, and the collar, E, of Gates' No. 2 patent is shown in a drawing of one of Brown's prior machines. The first claim in Gates' patent No. 3, (the chief claim in controversy,) is for a new article of manufacture, namely: "A segmental portion of the bearing-box, babbitted, so that when it becomes worn it may be removed, and a new segmental bearing substituted in its place." The alleged invention consists, not in the box cavity, but in the babbitted segmental portion of the bearing-box. There was no invention in thus babbitting part of a box cavity, and, if there was, the defendant babbitts the entire inner surface of the bearing-box, as such bearings had been treated before.

The alleged invention in Gates' patent No. 4 is summed up and embraced in the fourth claim which reads: "The shaft of an ore-crushing machine provided with a hard metal plate on its lower end, in combination with an adjustable sliding step-block, an oil-step box, and a bearing for the shaft, substantially as and for the purpose specified." Before this claim was allowed, the patentee was required to amend his application by inserting the words, "the adjustable sliding," and the alleged infringing machine contains no such sliding block. The mere attachment of a hard metal plate on or in the lower end of the shaft, admitting that Gates was the first to do it, involved no invention. But if it did, it consisted in the improvement of one of the elements of the combination, namely, the shaft, and did not affect the combination claim. Steel wearing, or hard metal plates, were old, and Gates did nothing more than any intelligent mechanic skilled in the art might have done. The shaft with the in-set plate operated in the combination just as it did before. No new or improved result was produced. With the exception of the inset of the wearing plate, the drawings of the Brown & Scoville No. 1 machine show the combination described in the Gates No. 4 patent. Indeed, the Brown drawings of the old Brown & Scoville machines show Gates' patent No. 4 to be worthless. I find that the Brown drawings anticipate the Gates patents No. 1, No. 2, and No. 3, and that Gates' patent No. 4, contains no claim for the insetting of the plate, and that that patent, too, is anticipated by the same drawings. In connection with the Gates patents, complainant's counsel and experts have failed to give proper weight to the Rutter patent, the Brown patent, and the two Brown & Scoville machines, especially the two latter machines. Gyrating shafts were in use before the date of any of the patents owned by the plaintiff. The patentee simply took the old gyrating shaft, and applied common devices to it.

The first claim of the Rusk patent reads: "The combination, substantially as described, of soft metal pins or plugs, C, with the driving gear of the grinding-mill." Rusk expressly limited himself to a soft metal pin, and his claim cannot be enlarged by construction. Thus limited, the claim is not infringed for the defendants' use, not a soft metal pin, but a hard cast-iron pin, and their machine does not show the Rusk driving gear. Break-pins were in use in machines of different kinds before the date of the Rusk patent. The idea of the break-pin, broadly, was not original with Rusk. With the exception of the pin being somewhat more accessible, the Raymond patent is not different from the Rusk patent.

Briefly, these are my reasons for dismissing the bill. Later, I may give a more formal opinion.