## GATES IRON WORKS v. OVERLAND GOLD MIN. CO.

(Circuit Court of Appeals, Eighth Circuit. September 3, 1906.)

No. 2,017.

1. PATENTS—INVENTION—STONE CRUSHERS.

The Hoyt patent, No. 525,419, for an improvement in gyratory stone-crushers, which consists only in making the hopper in two annular sections and so supporting the outer section that the inner one may be lifted out independently of the other to facilitate the making of repairs in the interior of the crusher, instead of making it in a single piece or in radial sections as previously done, is void for lack of invention; only mechanical skill and experience being required to devise such improvement.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 16, 17.]

2. SAME.

The Gates and Capen patent, No. 616,659, for an improvement in gyratory stone crushers, covers only a mere detail of construction, within the domain of mechanical skill, and is void for lack of invention.

Appeal from the Circuit Court of the United States for the District of Utah.

John R. Bennett and Thomas F. Sheridan, for appellant.

Charles K. Offield and Charles C. Linthicum, for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This is an appeal from a decree of dismissal of a bill for the infringement of claims 1, 2, 3, and 4 of letters patent No. 525,419, issued September 4, 1894, to the appellant, upon the application of Avery Eugene Hoyt, and of claim 1 of letters patent No. 616,659, issued December 27, 1898, to the appellant upon the application of Philetus Warren Gates and Thomas W. Capen. Both patents were for improvements in gyratory stone crushers, the art in relation to which is shown to have been

well advanced. The construction and operation of such a crusher are sufficiently described as follows: Its frame is in the nature of an upright cylinder consisting of two parts, designated as a bottom shell and a top shell, which are rigidly fastened together by means of bolts inserted in exterior flanges at the point of union. The top shell has a removable lining of sectional plates of chilled material, called concaves, forming a crushing chamber open at the top and bottom and shaped like an inverted truncated cone. Inside of this chamber and mounted upon a gyratory shaft is a crushing head of chilled material resembling a truncated cone. A spider, which is a vertical bearing box connected by two or three arms or legs with an annular rim, surmounts and is rigidly secured to the top shell. The shaft is engaged at its top in the bearing in the spider and at its lower end, which is within or below the lower shell, is mounted in an eccentric. When it is gyrated the crushing head is given a wabbling motion, like that of a top in the final effort of spinning, and is always approaching the concaves at one point as it recedes from them at another. The stone is delivered at the openings between the arms of the spider by means of a hopper and falls into the space between the crushing head and the concaves, as will be readily understood from the following representation of the top of the machine:

The hopper formerly consisted of a single piece, or of segments separated by radial lines and bolted together. It rested at its lower inner part upon the spider rim, and at its higher outer part came in contact with the surrounding woodwork or platform. This and the weight of the hopper made access to the interior of the machine for the purposes of repair or adjustment somewhat difficult, because that could be had only by removing the spider. To obviate this difficulty is the purpose of Hoyt's improvement, which, as described in the specification forming part of the letters patent, consists (1)

in dividing the hopper annularly into two parts, as indicated in the foregoing illustration, the outer diameter of the inner part slightly exceeding that of the spider rim upon which it rests, and (2) in providing the outer part at its inner portion with a flange or legs to rest upon a flange on the upper portion of the top shell of the machine, so that the spider and the inner part of the hopper can be lifted out of position without disturbing the outer part or the surrounding woodwork or platform. The specification also states that the inner part of the hopper may be formed integral with the spider, without departing from the principle of the invention. The first four claims of this patent are as follows:

"(1) A hopper for a stone crusher formed of two or more sections or rings arranged on different planes, and one section forming a continuation of the other so as to form a continuous unbroken surface in the said hopper and one of said sections being adapted to be lifted up and away from the other section without disturbing the latter, substantially as described.

"(2) A hopper for a stone crusher formed of two or more sections or rings arranged on different planes, and one section forming a continuation of the other so as to present an unbroken surface in the said hopper and the inner one of said sections resting upon an independent and different support than that upon which the section or ring immediately surrounding it rests or is supported, substantially as described.

"(3) The combination in a hopper for a crusher, of two or more sections arranged on different planes and forming a continuous unbroken surface and so constructed that either one of said sections may be removed without disturbing the other, substantially as described.

"(4) In a gyratory stone crusher, the combination of a crusher frame, a hopper constructed of outer and inner sections or rings arranged on different planes and forming a continuous unbroken surface, a gyratory shaft, a crusher head thereon, a spider mounted on said frame and supporting the inner section of the hopper, the said shaft, spider and inner hopper section being so constructed that they may all be removed without interference from the outer section of the hopper, substantially as described."

Assuming, but without deciding, that these claims adequately cover the improvement before described, in respect of both the annular division of the hopper and the means for supporting the outer section, the question is presented, does the improvement amount to invention? The advanced state of the art, as is disclosed in Gates Iron Works v. Fraser, 153 U. S. 332, 14 Sup. Ct. 883, 38 L. Ed. 734, and in Birmingham Cement Mfg. Co. v. Gates Iron Works, 24 C. C. A. 132, 78 Fed. 350, and the common use of these machines, wherever stone was being broken or ore crushed, strongly suggest that in approaching a decision of the question we should not be unmindful of what was so well said in Atlantic Works v. Brady, 107 U. S. 192, 199, 2 Sup. Ct. 225, 231, 27 L. Ed. 438:

"The process of development in manufactures creates constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences. The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the

useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privilege tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The hopper formed of two annular sections does not alter the operation of the crusher, but in that respect performs the same function in the same way as did the hopper cast in a single piece or formed of sections separated by radial lines and bolted together, so the claim to invention lies entirely in so dividing the hopper and supporting the outer section that the inner section overlying the spider rim may be handled, put in place, and lifted out of place independently of the other. Was this more than the employment of obvious mechanical expedients which would naturally occur to a skilled mechanic or engineer in the intelligent practice of his calling? We think it was not. To divide into parts what cannot be conveniently handled as a whole is elementary, if not instinctive, and to make the division of circular objects along circular lines has long been common. Indeed, the record contains several letters patent for improvements in blast furnaces antedating Hoyt's application which disclose hoppers divided into two or more annular sections for convenience in handling and in obtaining access to parts of the furnace below the inner lower sections. Of couse, when this hopper was divided, provision had to be made for supporting the outer section, and this was done by arranging a downwardly projecting flange upon the inner part of that section and an outwardly projecting flange at the top of the top shell upon which the former could rest. But flanges in various forms had been so long and so generally used as a means of support or of holding parts of machinery in position that their adaptation to a situation not more complex or difficult than this did not require anything more than the application of ordinary mechanical skill and experience.

The case of Hendy v. Miners' Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207, relied upon by the appellee, is well in point in principle. The first claim of the patent there in question was for an improvement in an ore feeder for quartz mills which consisted in mounting a feed cylinder upon a frame or foundation of timbers mounted upon rollers, so that the cylinder and frame could be readily moved when it was desired to repair the mill. The court held that the improvement did not amount to invention, saying:

"It is contended, in defense, that claim 1 of the patent is really a claim only for making the timbers movable, by mounting them upon rollers, so as to be able to move the cylinder and frame about as desired, and that this required no exercise of any inventive faculty. This seems to be the purport of the invention, as stated in the specification. It is the movable character of the frame on which the feed cylinder is mounted, so that the cylinder

and frame may be readily shifted from place to place, when repairs are desired, that is designated as the invention. When the mill is in operation, the movable feature is not brought into play. It is only when the mill is out of operation that the movable feature is to be used. The first claim does not appear to cover the functions or operation of the feeding cylinder, I, as a part of the mill, when in operation; and, interpreting it by its own language as well as by that of the description in the specification, it covers only the mounting upon rollers of the timbers which carry the feeding cylinder. Merely putting rollers under an article, so as to make it movable, when, without the rollers, it would not be movable, does not involve the inventive faculty, and is not patentable. * * * Moreover, there is no patentable combination between the rollers which make the timbers movable and the feeding cylinder, I, mounted upon the timbers. The union of parts is merely an aggregation. The feeding cylinder, mounted upon timbers which have rollers, operates no differently from what it does when mounted upon timbers which have no rollers."

Our conclusion is that the improvement in the hopper did not involve the exercise of the inventive faculty.

Formerly the spider rim was usually fitted in a recessed shoulder in the inner upper portion of the top shell, and its inner surface was flush with the concaves and immediately above them. This was deemed objectionable because it brought the rim within the sphere of the crushing action and thereby subjected it to wear and radial strains which it was not well calculated to withstand. It is the contention of the appellant that the first claim of the Gates and Capen patent provides for a transposition of the spider rim from the inner shoulder in the top shell to an outer shoulder recessed therein, whereby it is removed from the sphere of the crushing action. Assuming, but without deciding, that the claim is properly so interpreted, the question arises, does it cover more than a mere detail of construction within the domain of mechanical skill? The chief function of the rim, which is cast integral with the spider arms and the top bearing for the gyratory shaft, is to support that bearing and to provide a means of securely holding it in place. The rim is set in the recessed shoulder or rebate and then bolted to the top shell. Subject to the objection before named, it will equally perform its purpose whether it is set in an inner or an outer rebate, and there is nothing which renders one form of construction more complex or difficult than the other. Practically speaking, what was done was to make the depending flange upon a lid-like covering fit to the exterior of the receptacle to be covered when before it had been made to fit to the interior. It was a mere detail of construction and within the domain of mechanical skill.

The decree dismissing the bill was right, and is accordingly affirmed.