## TRAYLOR ENGINEERING & MFG. CO. v. WORTHINGTON PUMP & MACHINERY CO.

(Circuit Court of Appeals, Third Circuit. October 1, 1924. Rehearing Denied December 1, 1924.)

No. 3090.

**1. Words and phrases—"Gyratory stone crusher."**

A "gyratory stone crusher" is a machine with a shaft or crushing means which, instead of rotating, gyrates or moves in a circular course under the control of an eccentric.

**2. Patents ☞328—960,231, for rock crusher, held valid and infringed.**

The Niedermeyer & Bernhard patent, No. 960,231, for a rock crusher, *held* valid, and claims 1, 2, 5, 6, 7, and 13 infringed.

**3. Patents ☞328—1,145,967, for lubricating device for rock crusher, held not infringed.**

The Bernhard & Sholl patent, No. 1,145,967, for a lubricating device for a rock crusher, *held* not infringed.

**4. Words and phrases—"Gear pump."**

A "gear pump" consists of two gears, through which in their intermeshing action oil is pressed, and forced in a fixed direction.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the Worthington Pump & Machinery Company against the Traylor Engineering & Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed in part, and reversed in part.

For opinion below, see 292 Fed. 777.

Fraley & Paul, of Philadelphia, Pa. (Henry N. Paul and Frank B. Fox, both of Philadelphia, Pa., of counsel), for appellant.

James Q. Rice, C. J. Sawyer, and Charles H. Howson, all of New York City, for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

WOOLLEY, Circuit Judge. This appeal is from a decree of the District Court holding valid and infringed claims 1, 2, 5, 6, 7 and 13 of Letters Patent No. 960,231 issued to Niedermeyer & Bernhard and claims 2, 3, 6 and 7 of Letters Patent No. 1,145,967 to Bernhard & Sholl. The patents relate to gyrating rock-crushing machines; the first to the machine itself and the second to a device, to be used upon it, for lubricating certain of its moving parts.

[1] Stone crushers of the gyratory type are standard machines. They take their name from the characteristic movement of a shaft or crushing means which, instead of rotating, gyrates or moves in a circular course under the control of an eccentric. Of the several machines of this type sold in this country the oldest and the one on which the patents in suit have direct bearing is the McCully crusher, originally known as the Gates crusher, the patent for which was before the Supreme Court in 1894. Gates Iron Works v Fraser, 153 U. S. 332, 338, 14 S. Ct. 883, 38 L. Ed. 734. See also Birmingham Cement Manufacturing Co. v. Gates Iron Works, 78 Fed. 350, 24 C. C. A. 132. Crushers of this type are made in any dimensions. They vary in height from one foot to thirty feet and in diameter from a size which can handle two-inch stone to a size which can crack bowlders as large as a grand piano and turn out crushed rock varying from a few tons to 1300 tons per hour. These machines have kept pace in size and capacity with the constantly increasing demand for stone in the concrete and road-building arts.

Before we come to the patent it will be necessary to give a general description of the McCully structure. From the outside it has the appearance of a gigantic coffee grinder. Using the dimensions of one of the larger machines, it has a feed opening of forty-two inches by one hundred and thirty-six inches and weighs about 425,000 pounds. Its outer part is a case or shell, the upper part of which is a conical chamber with its apex pointing downward. Within the case is a vertical steel shaft of about twenty-one feet in length and thirty inches in diameter which is pivotally suspended from a spider supported at the top. For the purposes of description the shaft may be divided into four approximately equal parts. The first or topmost part has the function of a fulcrum in its loose connection with the overhang of the conical casing; to the second part there is attached a crushing cone, with its apex pointing upward, a position opposite that of the conical shell. This is called a crushing head. The third part has no distinct function except, possibly, that of leverage. The fourth or lowest part is enveloped by eccentric mechanism geared with a countershaft through which power is conveyed from without. The shaft, movably held at its upper end, is operated by the eccentric at its lower end and therefore is a lever of the second order, the load being at the crushing head between the fulcrum and the power. The principle of the crushing operation comes from the gyratory movement of the shaft cone or crushing head with relation to the descending walls

of the conical shell. The movement which the shaft gives the crushing head causes it continuously to approach some part of the interior wall of the crushing chamber and continuously to recede from other parts of the wall. When rock is fed into the crushing chamber the conical crushing head does not rub or grind it, nor does it pack it, but it cracks the rock and breaks it into smaller pieces and then, in its advancing and receding movement, impinges upon and cracks the pieces next in size until, continuously advancing and receding, the gyrating crushing head breaks the stone to the minimum desired and it passes out from the machine.

### The Crusher Patent.

[2] The invention of the patent in suit relates to crushers of this type. The patent therefore is for an improvement upon other mechanism. This must be borne in mind in determining its scope.

What did the inventors do? They found in a crusher of this construction a steel shaft as the crushing means which in the rapid advance of the art had reached its limit of manufacture and operation. It was from twenty to thirty feet long and about three feet in diameter and was required to stand enormous strains when driven by great power against masses of receding rock. This length of shaft involved great weight, hence substantial cost, a liability to bend and thereby defeat crushing action, and increased forging problems with every additional inch in dimensions. The inventors found this shaft divided functionally into the four parts we have described. Giving them names, the first quarter was the fulcrum quarter; the second the crushing head quarter; the third quarter, nothing (unless it gave additional leverage); and the fourth the gyrating quarter. Now what the inventors did was to cut out the third quarter of the shaft altogether, push up the fourth quarter (with the eccentric) to a position directly below the crushing head (the second quarter), reverse the position of the gear from above the eccentric (as they had to do), and inclose the hub and gear mechanism. They called this invention. Was it? The Patent Office thought it was and awarded them a patent.

The defendant says it was not invention for three reasons: (1) Shortening the shaft was old; (2) placing the eccentric above instead of below the gear was old; (3) shaft driving mechanism, including as in one group of claims "an eccentric hub and gear inclosing chamber" and in another group "a chamber arranged to inclose the gearing," were parts of an organization which has never been a benefit to the art. To support its contention that the shaft shortened by displacing the third quarter and placing the eccentric directly below the crushing head was old, the defendant cites several patents to which we have given careful study and with reference to which we shall make brief comment. The first is United States Letters Patent No. 1,019,997 and British Letters Patent No. 1,681 of 1907 to F. B. Symons. In the crusher of these patents it is clear that the eccentric is directly below the crushing head. Indeed, it runs into and through the head. But the whole organization of this crusher is so different from that of the McCully crusher out of which the invention of the patent in suit had its birth that it does not operate as an anticipation or as a prior art limitation. There is a similar conical case within which in transposed position is a conical crushing head but the principle of leverage and graded crushing, which is the basis of the construction of the McCully crusher and of the patented machine, is abandoned and substituted for it is the principle of direct rotating wedge crushing action in which there is no graded motion from the top to the bottom of the head. The Symons machine is a shaftless device having a crushing head surrounding an eccentric which, in turn, is journaled upon a vertical pillar supported in the bottom plate and top spider of the machine. Beneath the eccentric and fastened to it is a gear and below this is a pinion to which the driving power is applied, so that, as stated in the British patent:

"The crusher head moves bodily back and forth in the receptacle, its axis remaining perpendicular to its direction of movement, or, in other words, without its axis tilting as is the case in crushing machines of the well-known gyratory type in which the head is mounted on a shaft that is supported at one end and has its other end moved or swung around in a circular path, the radius of the path followed by any given point in the axis of the shaft being greater or less according to whether the given point is further or nearer to the supported end of the shaft."

The Symons crusher is altogether different both in structure and principle of operation from the structure of the McCully crusher and the improved crusher of the patent.

German Patent No. 192,920, July 24,

1906, issued to Luhne, is also cited as showing a crusher with a short shaft operated by an eccentric directly below the crushing head. In the Luhne patent, so far as we have been able to discover, there is no shaft at all and the eccentric is not located below the crushing head but within it. We have been persuaded by the testimony that the structure of this patent is of an entirely different type from that dealt with in the patent in suit, being what the Luhne patent itself refers to as a "double rotary crusher" with crusher cone disposed above and below a spherical bearing provided on a vertical central column. In other words, the Luhne patent shows a structure in which the top and bottom ends of the crusher cone move in opposite directions. It follows that there is one region between the two in which there is no crushing action whatever. Instead of giving a graded motion due to the gyration of a shaft suspended from above, as in a machine of the McCully type, the Luhne crusher is intended to crush both above and below the suspension of the head by the motion thereof in opposite directions. The construction of the Luhne patent has, in our opinion, no bearing on the problem of inventively developing the McCully structure into a stronger, lighter and more compact gyratory crusher.

The device of Patent No. 431,069 to Lowry differs fundamentally in principle from that of the patent in suit in that it employs a lever of the first order instead of a lever of the second order. The fulcrum or gyratory bearing is located below the crushing head and above the eccentric with the result that the top of the crushing head has a greater motion than the bottom with a corresponding increase of strains in the gyratory bearing and eccentric.

Finally, the crusher, which since 1905 has been made and marketed by the Austin Manufacturing Company, is cited as prior art showing a shortened shaft. The Austin crusher is, for present purposes, the McCully standard crusher with the eccentric above the gear instead of below. It is urged that in this transposition of the eccentric the shaft is "somewhat" shortened. There is no substance in this contention for if shortened at all the shaft is not substantially shortened and the eccentric is not directly below the crushing head as called for by the patent. Thus it appears that from the date of the Gates patent (1881) and the McCully patent (1886) until 1908 when the application for the patent in suit was filed, the long shaft of the Gates and McCully structure, with its leverage action of the second order and the peculiar functions of three of its parts and no function of one part, was left unchanged by inventors and men skilled in the art. And we are inclined to think that the reason inventors and mechanics did not attempt to shorten the shaft was the fear thereby of lessening leverage. On first view it would seem that greater leverage was gotten from a shaft of great length. As we have said, the third part of the shaft was, but for leverage, entirely useless. The obvious reason for letting it remain there through the years must have been to preserve the leverage that seemed to come from it. Now the patentees went directly in the face of this long practice and cut out this part of the shaft without appreciably lessening the power. This, evidently, was not an obvious thing to do. Certainly it did not appear so to any one else during the previous quarter of a century. Casting out as useless this part of the mechanism which had been used so long for only one purpose was, we think, almost audacious. Besides being novel, this act made a distinct advance in the art in making the building of still larger machines possible, in reducing forging problems, in stiffening the structure, and in effecting savings in metal and money.

It is shown by the testimony that the invention of the patent has raised the limit of crusher building from a forty-two inch to a sixty inch feed opening with an output capacity of 2,400 tons per hour and has reduced the metal weight by 250,000 pounds; that the shaft of a crusher is six and one-half feet shorter than would be required in a sixty-inch standard McCully machine and 24,000 pounds lighter. In a sixty-inch machine of the McCully type, were it possible to build one without the improvements of the patent, the spider would weigh 110,000 pounds. The patent reduces its weight to 58,000 pounds. The eccentric and gear of a sixty inch old style machine, the place where the power is transmitted and the strains are greatest, would weigh 18,400 pounds; the same mechanism of a machine of the patent would weigh 19,543 pounds, an increase of only about 1,000 pounds. There is a corresponding difference of 40,000 pounds in decreased weight in the plate. Proportionate savings are made in all sizes of machines. While not controlling, these figures are persuasive and must be given consideration. Counsel for the defendant, however, minimize the fact and the achievements of the shaft shortening element of the invention

and maintain that invention, if any, is not found there but in the gear and hub arrangement, the third element of the patent. Their argument is addressed to this aspect of the structure as though it were the thing to which the inventors directed their minds. Our view is altogether different. As we read the patent and the testimony it is plain that what the inventors sought was a way of shortening the shaft and thereby lightening and strengthening the machine. They did not start at the bottom of the long shaft and invent new eccentric mechanism. They started up the shaft and cut out and threw away what proved to be a useless part. Dispensing with this part and thereby decreasing weight and cost was their capital conception. What followed was but incidental. When they cut out the third quarter and thrust the fourth quarter against the second they inevitably brought the eccentric directly below the crushing head. This alone was not invention; it was a natural consequence. This was the first incident. In this contact they could not leave the gear above the eccentric as in McCully, so they resorted to Austin and placed the gear below. This was the second incident. Then they arranged a gear inclosing mechanism to meet this change. This was the third incident. Whatever their importance, these incidental elements of the invention are but the natural and secondary parts of an organization that has for its primary element the shortening of the shaft. Without the shortening of the shaft the value and patentability of these elements would be doubtful indeed. They did not produce the achievements of the new structure. We are of opinion that invention is involved in the structure of the patent and that the claims in suit are valid.

Coming to the question of infringement, we first note that the inventors were at one time employees of a corporate predecessor of the plaintiff and later of the plaintiff itself. They sold their invention and assigned their patent to their employer, a concern engaged in the manufacture of crushers under the patentees' technical and inventive direction. In 1917, Bernhard, one of the patentees, left the employ of the plaintiff and became chief engineer of the defendant corporation. He took with him Miller, who was the plaintiff's superintendent, and later Fritzki, a skilled erector of crushers, and another employee named Hughes. Bernhard, Hughes and Miller, after entering the employ of the defendant, collaborated in designing and constructing the alleged infringing machine here known as the "Michi-

gan machine" because made for and installed in the plant of the Michigan Limestone & Chemical Company. Obviously what Bernhard did was what inventors frequently do upon changing employment. They make a new structure and try to include in it the inventive features of a patent (which they had acquired and sold) without infringing it—a task which, while sometimes possible, is rarely successful. Bernhard says that in making the structure for the defendant he tried to avoid his own invention covered by the patent which he had sold to the plaintiff. But what he did was this: He cut out the third quarter of the McCully shaft just as he and his co-inventor had done in the invention for which the patent was awarded them. In other words, the defendant, through Bernhard, appropriated bodily the capital idea of the invention and, retaining that idea with all its material and mechanical advantages, it now maintains that it did not infringe because in the next two steps Bernhard did what he had a right to do. The first step relates to the position of the eccentric. As the gear would not operate in contact with the crushing head or would not operate if too close, Bernhard did what he had done before, that is, he transferred the eccentric from its position in McCully to its position in Austin, a change from below the gear to above the gear. This, however, is but one element of the invention and one which is a natural incident to the main thing of shortening the shaft. The defendant further denies infringement because (still holding on to the shortened shaft) it has a gear and eccentric mechanism different from that of the patent, that is, different from its second and third incidental elements.

With reference to the eccentric and gear mechanism, all the claims in suit place the eccentric "below" or "directly below" the head. This was new in a crusher of the McCully type with the shortened shaft. It was the natural thing to do, for that was the only place to put it when the third quarter had been cut out. Having pushed up the eccentric, the patentees provide mechanism for its parts and connections. The claims in one group call for a "chamber arranged to inclose the gear." The Michigan machine has this. The claims in another group provide "an eccentric hub and gear inclosing chamber." The defendant says the Michigan machine does not have this. Whether it is right depends upon the meaning of this expression and the scope of the claims.

The plaintiff construes the last expression as though it embraces two things, "an eccentric hub and (a) gear inclosing chamber." The defendant construes the words "an eccentric hub and gear inclosing" as descriptive of the word "chamber." In all claims, except 1 and 2, the chamber referred to incloses only the gearing. Of these none provides that the eccentric hub be inclosed We are, however, inclined to construe claims 1 and 2 literally, yet when reading them in connection with the specification and diagram, it is clear that the patentees do not mean a chamber which wholly incloses the eccentric hub and gear. This chamber wholly incloses the gear just as a like chamber in the Michigan machine, but, not counting the grease holes (13) as parts of the chamber, it incloses only a part of the hub. The gear chamber in the Michigan machine does this also, though in a lesser degree. If the eccentric hub and gear mechanism were the whole invention, or the center of it, it might be so construed as to relieve the eccentric hub and gear mechanism of the Michigan machine from infringement. But as this arrangement is only incidental to what elsewhere is the central conception of the invention, we are of opinion that the mechanism of the Michigan machine in this regard falls within the domain of equivalence. Without repeating the many details of the argument on this issue, we are satisfied that the learned trial judge committed no error in finding infringement.

### The Lubricating Patent.

[3, 4] As a stone crusher of the type of the patent in suit is operated by very high power, subjected to great strains and surrounded all the while by volumes of dust, lubrication is a serious problem. Bernhard and Sholl, when employees of the plaintiff, invented a lubricating device free from objectionable pipes and valves for use in the crusher of the patent in suit by adapting a gear pump to it and causing the pump to be operated by the eccentric of the crusher. A gear pump is a very clever arrangement consisting merely of two gears through which in their intermeshing action oil is pressed and forced in a fixed direction. If intermeshing pinions be tightly inclosed inside of the immediate region of the point of contact, the teeth of the pinions will continually carry oil between them from one side of the pinions to the other, except where they intermesh. Consequently, there will be a continuous driving of oil in one direction opposite to that in which the intermeshing portions of the pinions move. This is a very old method of pumping oil. If the patentees had invented this method or mechanism, they would, because of its simplicity and high utility be entitled to broad claims. But the patentees took this device which, being old, was not theirs, and simply provided a new method of operation. If invention be involved, it is in a new method of operating an old means. This method of operation is by the eccentric of the crusher, and by this the patent is limited. The defendant used the same gear pump but it was operated by the shaft. In a crusher of another make an old gear pump was operated by the countershaft. The defendant's operation by the shaft is, we think, no more an infringement of the plaintiff's patent calling for operation by the eccentric than was the operation by the countershaft (if prior) an anticipation of the plaintiff's patent. Limiting the claims to the only new thing which they disclose, we are constrained to hold that, if valid, they are not infringed.

That part of the decree of the District Court which holds claims 1, 2, 5, 6, 7 and 13 of Letters Patent No. 960,231 valid and infringed is affirmed and that part which holds claims 2, 3, 6 and 7 of Letters Patent No. 1,145,967 infringed is reversed, with one-third of the cost of this appeal to be taxed against the appellee and two-thirds against the appellant.