KENNEDY v. ALLIS–CHALMERS MFG. CO.

District Court, D. Delaware.   September 14, 1927.

On Rehearing, October 25, 1927.

No. 615.

1. Patents ⬅⮕328—Patent No. 1,436,338, for improved driving means for gyratory stone crusher, claims 2 to 10, inclusive, 12, 23, 24, 25, held valid and infringed.

Patent No. 1,436,338, relative to improved driving means for gyratory stone crusher, claims 2 to 10, inclusive, 12, 23, 24, 25, held valid and infringed; there being nothing from prior art that destroys claims or restricts their scope.

On Rehearing.

2. Patents ⬅⮕328—Patent No. 1,436,338, for improved driving means for gyratory stone crusher, claims 8 and 12, held anticipated.

Patent No. 1,436,338, relative to improved driving means for gyratory stone crusher, claims 8 and 12, held anticipated.

In Equity. Suit by Joseph E. Kennedy against the Allis-Chalmers Manufacturing Company. Decree for plaintiff, except as to certain claims.

E. Ennalls Berl and Ward, Gray & Ward, all of Wilmington, Del., and Thomas Howe, of New York City, for plaintiff.

Clifton V. Edwards (of Edwards, Sager & Bower), of New York City, George F. De Wein, of Milwaukee, Wis., and William G. Mahaffy, of Wilmington, Del., for defendant.

MORRIS, District Judge. [1] The patent in suit No. 1,436,338 to Carman, assignor to Joseph E. Kennedy, the plaintiff, has to do with improved driving means for his gy-

ratory stone crusher of the type described in Worthington Pump & Machinery Co. v. Traylor Engineering & Mfg. Co., 1 F.(2d) 833 (C. C. A. 3). More particularly it has to do with the mounting—how and where—of the driver and with the means connecting the driver with the operative parts of the crusher. The crusher, which, fundamentally, is but a crushing chamber through which passes a lever of the second order fulcrumed at its upper end in the upwardly extended vertical axis of the chamber and journaled at its lower end eccentrically in a bushing or bearing whose center and axis is the lower extension of the vertical axis of the chamber, is operated by rotating in its sleeve this bushing or eccentric. The rotation brings about a gyratory movement of the crushing head rigidly affixed to or a part of the portion of the lever in the crushing chamber. To rotate the eccentric, the patentee provides driving means supported concentrically of the axis of the crusher, independently of the crushing member or the eccentric, and operatively and detachably connected to the eccentric at one end thereof concentrically with the axis of the crusher. The means connecting the driver with the eccentric also supports and keeps in place the eccentric, and at the same time, having no moving parts passing through it, co-operates with the sleeve or support for the eccentric to provide an inclosed lubricant carrying housing for that bearing. The connection with the eccentric is direct (without intervening gears) but is either flexible or rigid. The drivers described are an electric motor and a rope or belt driven pulley. Of the claims in issue, 2 to 10, inclusive, 12, and 23 to 25, inclusive, representative claims are:

"2. In a crusher, a gyratory crushing member, an eccentric mounting for said member, driving means rotatably supported independently of the crushing member and its mounting, and detachable means for operatively connecting the driving means with the mounting of the gyratory crushing member concentrically thereof."

"4. In a crusher, a crushing chamber, a gyratory crushing member fulcrumed concentrically of the crushing chamber, a bearing, means to journal the crushing member eccentrically in said bearing, a rotary driving unit rotatably mounted independently of the crushing member, and detachable means to operatively connect the driving unit to the eccentric bearing concentric with the axis of the crusher."

"10. In a crusher, a gyratory crushing member, a bushing in which said crushing member is mounted, a driver supported concentrically to and independent of the gyratory crushing member and bushing, and detachable means to operatively connect said driver with the bushing to permit of the removal of the bushing without removing the driver."

"23. In a crusher, the combination of a rotatable bearing, a crushing member eccentrically mounted in said bearing, an electric motor supported independently of the bearing concentric with the axis of the crusher, and means to detachably connect the motor with and support the bearing."

The defendant, Allis-Chalmers Manufacturing Company, charged with infringement of the claims in issue, plants its denial of the charge upon the grounds that the claims, if saved, must be limited by the specification and the prior art, and that its crusher is outside the claims when so limited. The parts of the specification stressed by the defendant are: "To rotate the eccentric bearing member 21 driving means are provided consisting of a driver or driving unit rotatably mounted or journaled upon the bearing sleeve 18 below the bottom plate of the base 7 concentric with the axis of the crushing apparatus and independently of the crushing member" (page 2, lines 54–60); and "by the mounting of the driver as described the driver encircles the bearing sleeve and eccentric bearing" (page 2, lines 103–105). The prior patents which, in defendant's view, impress upon the claims the limitations of the specific structure described in the specification, are No. 525,443 to Carman, Hanna, and Gates, No. 1,029,742 to Capen, No. 1,021,233 to Beach and Hodge, and No. 988,403 to Sturtevant, consisting in part, because of reference, of the earlier patent to Sturtevant No. 977,235. The first of these patents, that to Carman, Hanna, and Gates, is for the crusher upon whose driving means Carman attempted, in the patent in suit, to improve. In that crusher the eccentric was gear-driven. The gear, encircling and removably attached or connected to the eccentric, was rotated by a countershaft and pinion. Mounting the gear upon the eccentric and connecting the two brought about a tilting and uneven and, hence, rapid wear of the eccentric due to the lateral pull on the gear by the pinion. A worn eccentric permitted the lateral thrusts and strains imparted to the eccentric by the resistance of the rock in the crushing chamber to the gyratory movement of the crushing head to be transmitted to the gear and thence to the remainder of the driving means, particularly

when the thrusts of the eccentric were at right angles to the teeth of the enmeshed cogs. Carman removed or lessened these defects and consequent vibration by supporting his driver independently of the gyratory shaft concentric with the axis of the crusher and operatively connecting it at one end of the eccentric concentric with its axis. By so mounting and connecting his driver and eccentric, the patentee was enabled to employ a direct electric motor drive. Nevertheless, the defendant reads the claims, particularly 2 and 9, of the patent in suit on the old Carman, Hanna, and Gates crusher. This result is possible, I think, only by giving to the terms "driver" and "driving means" as used in the claims a definition different from that assigned to them in the specification by which all parties are bound. Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 678, 41 S. Ct. 600, 65 L. Ed. 1162; Standard Paint Co. v. Bird (C. C.) 65 F. 509, 510. The defendant looks upon the shaft $G'$ and the pinion $g$ as the "driving means" of Carman, Hanna, and Gates, and finds that they are rotatably supported independently of the crushing member and its mounting while he considers the large gear wheel $g'$ to be a detachable means for operatively connecting the driving means with the mounting (eccentric) of the gyratory member coaxially therewith. But, as employed by the patentee here, the terms in question would designate and include only the large gear wheel $g'$. So understood, the claims do not, I think, read upon the old crusher of which the patentee here was one of the joint inventors.

The Capen crusher is of a different type. It is similar to the patent to Lieber No. 1,-030,194 over which the Patent Office allowed the claims in suit. It has no rocking or spiral motion. It functions differently. The driver is not mounted independently of the eccentric.

The patent to Beach and Hodge was likewise cited and considered by the examiner during the pendency of the application for the claims in issue. It has a horizontal, not a vertical axis. It is a grinder, and is not subjected to the strains of a crusher. Its eccentric is not concentrically driven.

The patent to Sturtevant, upon which the defendant strongly relies, depends largely for its nullifying value upon whether the clamp 30 permits in operation a change in the direction of the axis of the eccentric. I do not understand from the specification of that patent, even when read in the light of the earlier Sturtevant patent that the clamp has or was intended to have that function. It was inserted to be broken in order to safeguard the more substantial parts of the apparatus against excessive strains. The eccentric 25 and the shaft 26 must consequently be considered as one. It follows that the driver 27 is not independently mounted.

I can find nothing in the citations from the prior art that either destroys the claims or restricts their scope.

The defendant's crusher is motor driven. The motor is independently mounted above the fulcrum "concentrically of the axis of the crusher." Its shaft is flexibly connected with the drive shaft which passes through a bore the full length of the main or gyratory shaft of the crusher and is splined at its lower end, concentric of the axis of the crusher, in the lower end of the eccentric. It is true that the connecting means between driver and eccentric do not serve to form the bottom of a lubricant chamber for the eccentric, and that by lessening the "throw" of the gyratory member it has become possible to increase the speed of the crusher and to bring about crushing of the rock by impact rather than by pressure alone. Yet Carman's employment of his connecting means, in the crusher described, to function also as a part of a chamber for lubricant, was but an incidental feature and not an essential of his invention while the structure upon which the defendant builds to obtain greater speed and greater output embodies, as I see it, the very pith of the Carman invention.

There must be a decree for plaintiff.

## On Rehearing.

[2] Since the filing of the opinion in this cause, the defendant, upon a rehearing, has urged the dismissal of the bill as to claims 8 and 12, upon the ground that, unlike the typical claims set out in the opinion, they neither expressly nor by necessary implication call for driving means independently mounted, and that, consequently, they are anticipated by Sturtevant. These claims, as I understand them, do not expressly call for an independent mounting of the driving means. In view of the large number of claims in the patent, and of the further fact that in many of the claims independent mounting is expressly provided for, I see no reason, in an effort to save these claims, to read into them something that was apparently deliberately omitted. So interpreted, they are anticipated, I think, by Sturtevant.

Consequently as to them the bill must be dismissed.